UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOE HAND PROMOTIONS, INC.                                    PLAINTIFF

vs                                             CIVIL ACTION NO. 3:14CV-86-CRS

RAFAEL HERNANDEZ, et al.                                     DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the plaintiff, Joe Hand Promotions, Inc. ("JHP"), for default judgment and/or summary judgment against various defendants and for an award of damages. (DN 31).

This action arose from an alleged unauthorized telecast on February 4, 2012[1] of the *Ultimate Fighting Championship 143: Nick Diaz v. Carlos Condit* at Habana Blues Tapas Restaurant located at 2013 N. Hurstbourne Parkway, Louisville, Kentucky. JHP owned the exclusive nationwide television distribution rights to the broadcast of this event. JHP, in turn, sublicensed broadcast rights to commercial entities, including restaurants, bars, hotels and the like in Kentucky. JHP filed suit against Habana Blues Tapas Restaurant 2 LLC, Rafael Hernandez, Leodan D. Aguilera, Michel A. Rebollido, and Miguel A. Garcia alleging that the

---

[1] The complaint alleges that the Pay-Per-View event was telecast on "Saturday, February 2, 2012." (DN 1, p. 3.). This is internally inconsistent, however, as February 2, 2012 was not a Saturday. The investigator's affidavit upon which the complaint is based states that he observed the telecast at Habana Blues on February 4, 2012. (DN 31-2, p.2). The court takes judicial notice of the fact that the fight was in fact televised on February 4, 2012. (http://www.ufc.com/event/ufc143?id=). The date of February 2, 2012 in the complaint is an obvious typographical error.

telecast at Habana Blues was unlicensed and was, in fact, illegally intercepted, in violation of the Communications Act of 1934, as amended, Title 47 U.S.C. § 605, *et seq*.[2]

The complaint names Hernandez, Aguilera, Reballido, and Garcia each as "an owner, and/or operator, and/or licensee, and /or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Habana Blues…" (DN 1, pp. 2-3, ¶¶ 6-9). Paragraph 12 states:

> With full knowledge that the (*Ultimate Fight Championship 143*) Program was not to be intercepted, received and exhibited by entities unauthorized to do so, each and every of the above named defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission at their Louisville, Kentucky location (2013 North Hurstbourne Parkway, Suite 200, Louisville, Kentucky 40223). Said unauthorized interception, publication, exhibition and divulgence by each of the defendants was done willfully and for purposes of direct or indirect commercial advantage or private financial gain.

Habana Blues, Hernandez and Garcia were served with process but failed to answer the complaint. Default was entered by the Clerk of Court against Habana Blues on October 15, 2014. Default was entered against Hernandez and Garcia on June 24, 2015.

Aguilera was served and responded to written discovery. He asserted through sworn responses that he was merely a silent partner and was never involved with the management or operation of the business. He indicated that he had no knowledge of or documents pertaining to the events in question. (DN 31-4).

Reballido was also served. He submitted a one-page typed letter in which he states that he was "only part of the opening of the restaurant…not its financial operation or its control." He

---

[2] The complaint also mentions the Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S.C. § 553, *et seq.* JHP may not recover under both sections. *Joe Hand Promotions, Inc. v. Willis*, 2009 WL 36511, *1 (N.D. Ohio 2009), cited by this court in *Joe Hand Promotions, Inc. v. Tip Off, Inc., d/b/a Woody's Bodacious Bar & Grill, et al.*, Civil Action No. 3:08CV-600-CRS. JHP's motion seeks to recover under § 605.

stated that he "never received profit from this restaurant or any checks." He said he was not responsible for managing any operations of the restaurant or any bank accounts, and was not involved in the business. (DN 31-5). Aguilera and Rebollido also filed a signed and notarized statement dated May 28, 2014 which states:

> I Leodan Diaz Aguilera am writing this letter in order to make the following statement:
>
> When the restaurant Habana Blues Tapas Restaurant 2 was opened in August of 2011, there were 4 partners in it. Acosta Rebollido and Leodan Diaz Aguilera were investors and our participation was the initial money contribution, but there were no other type of control from Michel Acosta Rebollido or Leodan Diaz Aguilera.
>
> All that resulted from this was a complete loss [sic] Michel Acosta Rebollido and Leodan Diaz [Aguilera] never received any compensation from the operation of that business.

The letter is signed by both Aguilera and Rebollido, and followed by a notary's stamp and notary signature. (DN 31-5).

JHP has moved for default judgment against Habana Blues, Hernandez and Garcia. It seeks summary judgment against Aguilera and Rebollido. It also seeks statutory damages, costs and attorney fees.

JHP attached various documents to its motion, including a number of Annual Reports filed by Habana Blues with the Kentucky Secretary of State. Garcia is not identified in the documents as an original organizer of the business, but is listed as a current Member and Officer in the company's 2013 Annual Report. (DN 31-3). Hernandez was listed as an Organizer in the

Articles of Incorporation, and is listed as a current Member in the 2013 Annual Report. *Id.* Hernandez is also the only Partner listed on Habana Blues' Kentucky liquor license. *Id.*

JHP submitted an affidavit of its investigator who witnessed the broadcast being displayed on two televisions in Habana Blues on February 4, 2012 at approximately 10:00 p.m. He stated that he could see a satellite box hooked up to at least one of the televisions. The investigator indicated that that the establishment had a capacity of approximately 120 people. He counted 9, 11, and 14 patrons at various times while he was in the restaurant. There was no cover charge, and there were no promotional materials or external advertising. The report does not mention any fight-related sales of food or beverages.

Garcia and Hernandez were properly served in this matter and, having failed to answer or otherwise appear, default was properly entered against them. Pursuant to Fed.R.Civ.P. 8(b)(6), all allegations other than ones relating to the amount of damages are admitted if a required responsive pleading is not filed. We conclude that JHP has shown that entry of default judgment is now appropriate, and thus all allegations alleged in the complaint which are not related to the amount of damages are admitted by these two defendants in this case.

The same is true for Habana Blues. The unauthorized broadcast was witnessed by the investigator and stands unrefuted by Habana Blues. Default was entered against it. Default judgment is proper as against Habana Blues as well.

JHP's motion for summary judgment against Aguilera and Reballido is another matter. While these individuals are also identified in the Articles of Incorporation as Organizers and in the 2013 Annual Report as Members and Officers, they have contested individual liability. They have averred that they were silent partners, had no contact with or involvement in the operations

4

of the restaurant and received no financial benefit from their silent investment. JHP's complaint contains conclusory allegations that they were individuals "with dominion, control, oversight and management of the commercial establishment," but offer nothing on summary judgment to establish these allegations. Further, Aguilera and Reballido unequivocally deny knowledge or involvement in the events in question.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). There must be more than "some metaphysical doubt as to the material facts" in question. The nonmovant must provide "concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Company v. Simon Aeriels, Inc.,* 869 F.2d 934, 937 (6th Cir. 1989).*citing Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment must be denied as to JHP, as Aguilera and Reballido may not be held individually liable under § 605 on the record before us. "[I] order to hold an officer, director or owner vicariously liable in an individual capacity under § 605, the plaintiff 'must show that [the director] had "a right and ability to supervise the violations, and that she had a strong financial interest in such activities."' [citations omitted]." *Joe Hand Promotions, Inc. v. Young*, No. 5:09-CV-157, 2010 WL 1979388, *4 (W.D.Ky. May 14, 2010). The record is devoid of facts suggesting that Aguilera or Reballido authorized the violation, had the right or ability to intercept the telecast, or derived any benefit from the interception. *See Joe Hand Promotions, Inc. v. Alvarado*, No. CV F 10-0907 LJO JLT, 2011 WL 1740536, *7 (E.D.Cal. May 4, 2011) holding:

> "Individual liability under the Cable Act requires that the individual authorize the underlying violations." *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D.N.Y. 2009). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F.Supp.2d at 473 (quoting *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997))…The record is bare that the Alvarados authorized statutory violations to subject them to liability. Nothing suggests that they had a right or ability to intercept the telecast on May 23, 2009 at Patron's Sports Bar. In addition, there is no evidence that the Alvaraodos derived a benefit from interception of the telecast. As such, the Alvarados are not subject to liability for Joe Hand's federal communications claims.

Summary judgement seeking personal liability against Aguilera and Reballido for violations of § 605 will be denied.

With respect to Hernandez and Garcia, we note that their default obtains a different result herein. They have admitted by default the allegations contained in paragraph 12 of the complaint, which we have quoted in full, with the exception of the allegations relating to the

amount of damages. The defendants have thus admitted that "with full knowledge…[they] exhibit[ed] the Program at…their Louisville, Kentucky location…" (DN 1, ¶ 12)..[3] Therefore, in addition to liability in their capacity as members and officers, they have individual liability along with Habana Blues for the unlicensed broadcast.

JHP seeks the maximum award of damages available under § 605 -- $10,000 for the violation plus $100,000 in enhanced damages for willful conduct -- in this case. 47 U.S.C. § 605(e)(3)(C)(ii). Its brief recites the standard "hit 'em hard" rationale we see in most of these cases, seeking impressive awards to deter future violations. However, such significant sums are not warranted here.

The court concludes that an award of $1,000 in damages is appropriate and within the range of other awards ordered by this court.[4] The court will decline to award enhanced damages as the plaintiff's evidence is weak. Despite the fact that "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems," *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 489 (S.D.N.Y. 1999), the court will, in its discretion, decline to award enhanced damages for willful violation of § 605. *Kingvision Pay-Per-View v. Langthorne,* 2001 WL 1609366 (D. Mass. 2001).

---

[3] Paragraph 12 goes on to state that the exhibition was "done willfully and for purposes of direct or indirect commercial advantage or private financial gain." This language recites a legal conclusion which is taken directly from the damages enhancement provision of § 605. Thus, it relates to the amount of damages and is not admitted by default. There must be evidence offered by JHP to establish entitlement to enhanced damages under the facts of the case. As we conclude later in the opinion, the court has been shown no such evidence.

[4] *Joe Hand Promotions, Inc. v. Tip Off, Inc. d/b/a Woody's Bodacious Bar & Grill*, No. 3:08CV-600-CRS; ($500 under § 553; no enhanced damages); *J & J Sports Productions, Inc.; J & J Sports Productions, Inc. v. El Rey Mexican Restaurant, LLC*, No. 3:10CV-730-CRS ($1,000; no enhanced damages); *J & J Sports Productions, Inc. v. Cole's Place, Inc.*, No. 3:10CV-732-CRS ($1,000 x 3 for willful conduct).

The evidence offered by JHP, as gathered by its investigator on the night in question, was that

(1)  The restaurant capacity was 120 patrons, but the investigator counted only 9, 11, and 14 patrons at the various times during his visit that he took a head count.

(2)  There was no external advertising of the broadcast nor were there promotional materials in the establishment.

(3)  There was no cover charge.

(4)  The investigator made no mention of any fight-related food or beverage sales.

Thus there is little to establish a basis for an enhancement beyond damages awarded for the violation itself.

We would contrast this case with *Joe Hand Promotions, Inc. v. Young*, No. 5:09CV-157-R, a case from this district where it was established by JHP that a cover fee was charged, and food and drinks were sold to approximately 76 patrons on the premises.  JHP was awarded $3,800 in statutory damages plus enhanced damages of $1,000 for what the court described as "clearly profiting" from the unlicensed broadcast.  Such evidence has not been offered in this case to suggest that the violation was undertaken for purposes of commercial advantage or private financial gain.  *See, e.g., Young*, *supra.* (willfulness found where establishment advertised in local newspaper that it would televise fight; showed fight on 17 television screens, and drew 76 patrons to premises).  Enhanced damages are not warranted here.

A separate order and judgment will be entered in accordance with this opinion.

February 8, 2016

**IT IS SO ORDERED.**

Charles R. Simpson III, Senior Judge
United States District Court

9